### MADISON v CALEDONIAN-AMERICAN INS. CO. OF NEW YORK

Ohio Appeals, 2nd Dist., Miami Co.

No. 390. Decided May 2, 1940.

174

A. W. & J. H. DeWeese, Piqua, for plaintiff-appellee.

Faust & Faust, Troy, for defendant-appellant.

**OPINION**

By BARNES, J.

The above entitled cause is now being determined as an error proceeding by reason of defendant's appeal on questions of law from a judgment of the Court of Common Pleas, Miami County, Ohio.

The cause originated in the Municipal Court of Piqua, Miami County, Ohio, and after issues joined was tried before a jury, resulting in a verdict and judgment for plaintiff.

On appeal to the Common Pleas Court on questions of law, the judgment was affirmed.

On appeal to our court we have presented to us the pleadings and record from the Municipal Court and in the same form as was presented to the Court of Common Pleas.

Plaintiff's action against the defendant was predicated on a fire damage claim amounting to $479.80 on a two-family, residence property located in Piqua, Ohio, and upon which a fire insurance policy duly issued by the defendants to plaintiff was then in force. The fire occurred on February 20, 1936. On the following day plaintiff caused verbal notice of such fire to be given to the local agent of the defendant company. Within ten days or two weeks, an adjuster appeared in Piqua and, after viewing the premises and receiving from plaintiff an estimate of claimed loss, opened negotiations looking to the adjustment of plaintiff's claim. The only question of difference was the amount of the fire damage. Negotiations continued until at least May 5th and, a settlement not having been agreed upon, plaintiff filed her action on July 14, 1936. The plaintiff in her petition in the first paragraph thereof set out the ownership of the premises, the issuing of the policy of insurance thereon by the defendant company, the payment of the premium, the amount of the policy, the time of coverage, and the further provision that loss or damage by fire, according to the terms of the insurance contract, was to be paid within 60 days after proof of loss was furnished to defendant.

The second paragraph of the petition, among other things, alleges that on February 20, 1936, the said house of plaintiff was damaged by fire to the extent of $479.80 and that on the following day notice of loss was given to the defendant company, and the matter was referred to its adjusters who requested that an appraisement of said loss and damage be obtained. The same was obtained and submitted to the adjusters and to the defendant company. Subsequently, offers of settlement were made to this plaintiff, which offers were rejected, and the condition of the policy requiring actual proof of loss was waived until such time as a satisfactory settlement was effected, and that plaintiff has duly performed all other conditions required to be performed under said policy, but no part of said loss has been paid, although demand has been made therefor. The third and last paragraph of the petition is the prayer for judgment, etc.

The defendant, after service of summons, within due time filed motion requesting the Court to

strike from the petition the following allegations as contained in the second paragraph thereof:

"And the matter was referred to its adjusters, who requested an appraisement of the said loss and damage be obtained, and the same was obtained and submitted to the adjusters and to the defendant company, and subsequently several offers of settlement were made to this plaintiff, which offers were rejected, and the condition of the policy requiring actual proof of the loss was waived until such time as a satisfactory settlement was effected."

for the claimed reason that the same is redundant, immaterial, irrelevant, and prejudicial. The attached memoranda in support of the motion urges the impropriety of injecting into the case the offers of settlement and compromise. The trial court overruled the motion, after which defendant filed answer.

The first defense of the answer admitted the execution and issuance of the policy of insurance, together with all its terms, as set out in the petition. It admits the damage to the premises by fire at the time alleged, and, further, that no part of any loss has been paid. It admits, further, that the matter of said loss was referred to its adjuster, and that an offer for settlement, for settlement purposes only, was made to said plaintiff. Further answering, defendant denies each and every other allegation contained in the petition.

For a second defense the defendant, among other things, avers in substance that the policy of insurance contained a provision against other insurance on the same property whether valid or not. It further averred that plaintiff, in violation of the condition

and terms of the policy, on the date of said fire had another policy of fire insurance, carried in the name of her husband, Clyde Madison, in the National Mutual of Celina, Ohio, to the amount of $3,000.00, which policy was in full force and effect.

These two paragraphs of the answer on motion of plaintiff were stricken, apparently for the reason that issuing of the policy in the name of the husband would not be in violation of the terms of the policy.

An amended answer was filed, the first defense of which was identical with the original answer. The second defense, of course, omitted the two paragraphs stricken from the first answer. The second defense set out in substance the following, all relating to the claimed terms of the policy and plaintiff's non-compliance therewith:

First, it was averred that it was provided in the policy that if fire occurred the insured would give immediate notice of any loss thereby in writing to said company; second, that insured should protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, make a complete inventory of same, stating the quantity and cost of each article and the amount claimed thereon; third, within 60 days after the fire, unless such time is extended in writing by said company,

"shall render a statement to said company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire; the interest of the insured and all others in the property; a cash value of each item thereof and the amount of loss thereon; all encum-

brances thereon; all other insurance, whether valid or not, covering any of said property and a copy of all the descriptions and schedules in all policies; and provides further that no suit or action on said policy for the recovery of any claim shall be sustainable in any court of law or equity until after a full compliance of the insured with all the requirements of said policy."

Defendant makes specific averments that plaintiff failed to give immediate notice of said loss in writing to the company and further failed to furnish the proof of loss with other detailed information, all required to be in writing and verified. The answer further alleges that the company never waived any of the conditions of said policy.

Defendant further avers that by reason of plaintiff's violation of terms and conditions of said policy, said policy is void. The prayer asks that plaintiff's petition be dismissed. Plaintiff's reply admits the averments in defendant's answer as to the provisions and conditions of the policy of insurance set out in second paragraph of defendant's answer. Plaintiff says that she has complied with all the provisions and conditions on her part to be performed by the terms of the insurance policy.

The third paragraph of plaintiff's reply is as follows:

"Plaintiff further says that the defendant company by reason of its adjuster investigating plaintiff's loss and negotiating for a settlement of the same, and also by reason of its denial of liability, has waived the performance by plaintiff of the provisions and conditions contained in said insurance policy on her part to be performed."

The fourth paragraph contains denial of all other allegations.

The case was tried to a jury, resulting in a verdict for the plaintiff in the sum of $350.00. Motion for new trial was duly filed, overruled, and judgment entered on the verdict.

Defendant-Appellant presents assignment of errors under ten separate specifications. We will take these up in the same order set out in the assignments.

"I
THE COURT ERRED IN ITS REFUSAL TO STRIKE FROM THE PETITION OF THE APPELLEE THE ALLEGATIONS CONTAINED IN THE SECOND PARAGRAPH THEREOF."

The matter sought to be stricken from the petition is set out in full on an earlier page of this opinion. Had the motion in its application to strike been limited to the following language: "And subsequently several offers of settlement were made to this plaintiff, which offers were rejected," we would have much difficulty in determining that such language would have no place in a pleading, but coupled as it is with other language which was proper we are unable to say that the Court was in error in overruling the motion as presented. Furthermore, a consideration of all the pleadings and the record, disclosing that the defendant insurance company was admitting liability in a lesser amount than that claimed by plaintiff, is a sufficient reason why the allegation as to proffered settlement would not be prejudicial.

"II
THE COURT ERRED IN GRANTING THE MOTION OF THE PLAINTIFF TO STRIKE FROM

## 178

THE DEFENDANT'S ANSWER THE SECOND AND FOURTH PARAGRAPHS IN THE SECOND CAUSE OF ACTION IN DEFENDANT'S ANSWER."

On former pages of this opinion the substance of the two paragraphs stricken from the defendant's answer were set out. The standard provisions relative to other insurance are within the powers of the parties to contract and are there contained in the policy of insurance. The policy may be voided by reason of failure of property owner to comply with ██ such terms. The **Phoenix Insurance Company v The Michigan Southern and Northern Indiana Railroad Company, 28 Oh St 69. Vol. 22, O. Jur., page 642 §538.**

Defendant in its answer (possibly through inadvertence) failed to aver that the claimed other insurance in the name of plaintiff's husband was on the ██ same property covered by the policy involved in this action. This omission is fatal and, therefore, the Court was not in error in striking the averments from the answer.

"III

THE COURT BELOW SHOULD HAVE SUSTAINED DEFENDANT'S MOTION FOR A DIRECTED VERDICT AT THE CLOSE OF PLAINTIFF'S EVIDENCE AND AGAIN AT THE CLOSE OF ALL THE EVIDENCE FOR THE FOLLOWING REASONS:"

The reasons assigned are three in number. One, that the plaintiff failed to prove the conditions of the policy were met with reference to the giving of immediate notice of any loss in writing to the company. Two, failure to file with the company written proof of loss and; three, that, although the petition and uncontroverted evidence disclosed a disagreement as to the amount of loss, plaintiff failed to submit the disagreement to appraisement according to the condition of the policy.

We now take up these reasons in order. It is uncontroverted that plaintiff did not give written notice to the company of her fire loss. What she did was to cause verbal notification to be given to the local agent, a Mr. Wilson, and he promised to notify the company. Undoubtedly the company received the notice, since within a period of ten days or two weeks thereafter the company sent an adjuster to view the premises.

Insurance companies, like all corporations, act through officers, agents, and representatives. It is always a safer plan to follow the express language of the contract of insurance in attempting to perform all conditions precedent.

A strict compliance would have been for the plaintiff to notify the company and not the local agent and such notification to be in writing. The sole and only purpose of such notification is to give the insurance company immediate notice of such claimed fire loss. A notification to the local agent is sufficient if in the receipt of such notice he is acting within the scope of his authority. There is evidence in the record that such was the general procedure, and the fact that the agent did accept such oral notice and passed it on to the company would be a sufficient compliance with this provision of the policy. This is true even though the policy contained provisions prohibiting waiver, etc. **Lind v The State Automobile Mutual Insurance Association, et al., 128 Oh St 1, syllabus 1.** Also page 8 of opinion. **O. Jur., Vol. 1, pages 673-675,**

§§33 and 34. 21 Oral Ruling Case Law, page 854 and 855, paragraph 34.

page 854 and 855, paragraph 34.

The second reason was failure to present proof of loss as prescribed under the terms of the policy. Plaintiff admits that the written proof of loss as prescribed in the policy was not furnished, but pleads waiver. The courts in Ohio from a very early date have not been in accord on the question as to whether or not the issue of waiver may be presented contrary to the positive and direct provisions of the policy; there is also conflict as to what constitutes a waiver in cases where it is held that the issue of a waiver may be raised. We do not find it necessary to review the many cases cited by counsel on this question, since the Supreme Court has set at rest the conflicting holdings in the case of **Lind v The State Automobile Mutual Insurance Association, et al., (1934, 128 Oh St, page 1).** Syllabus 1, 2, and 3 reads as follows:

"1. Clauses in an insurance policy, prohibiting waiver of any of its provisions unless endorsed on the ɪ ˋlicy in a prescribed manner, refer only to those provisions and conditions which constitute part of the contract of insurance, but do not apply to waiver after a loss has occurred, or after liability has attached by reason of the occurrence of an event within the protection of the policy, such as furnishing proofs of loss, sending immediate written notice of an accident, transmitting notice of suit, and the giving of other notices.

"2. Waiver of such subsequent proofs and notices may be shown by words or conduct, on the part of the insurer or its authorized agent, inconsistent with an intention to enforce strict compliance with the terms of the policy, from which the assured is lead to believe such compliance is unnecessary, and whereby he fails to make such compliance.

"3. The authority of an agent, to waive such subsequent proofs and notices, may be established by showing a course of conduct on his part, knowingly permitted by his insurer-principal, through which an agent has the apparent power to accomplish those things he undertakes to do, so that an assured dealing with him is given reasonable grounds for believing he possesses such power."

Plaintiff presented testimony that the adjuster in answer to an inquiry made the direct statement that pending their negotiations for settlement it was not necessary to make out a proof of loss in accordance with the terms of the policy. The adjuster in his testimony denies having made such a statement. Of course, if the issue is properly raised, this would present a factual question for the determination of the jury. There is also presented in the record as Plaintiff's Exhibit "B" a letter to the plaintiff, Lucille Madison, dated March 5, 1936, in which a sum is stated as the stipulated amount of loss and damage, and the closing paragraph of this letter over the signature of Mr. R. C. Geiger, Adjuster, reads as follows: "If this is satisfactory, please advise and we will send you proof of loss for your signature." It is our determination that the record presents a factual question for the determination of the jury and, hence, the second reason does not present a ground for directed verdict.

The third reason assigned for directed verdict was the failure of the plaintiff to procure an appraisal as required under the stipulations of the policy. This provision

of the policy starts at line 86 and continues through to and including line 91 and reads as follows:

"In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire, the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraisers respectively selected by them and shall bear equally the expenses of the appraisers and umpire."

We also quote the following pertinent provisions starting at line 92 and continuing through and including line 95:

"This company shall not be held to agree to any provision or condition of this policy or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until 60 days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required."

The record discloses that no appraisement such as provided for under the policy was had. The Supreme Court of Ohio in the case of Graham, et al., v The German American Insurance Company (1907) 75 Oh St, 374, very clearly and positively provides that the obligation rests upon the insured to show that he has █ on his part performed or offered to perform the condition as to the appraisal. In this case the Supreme Court expressly overruled the case of Grand Rapids Insurance Company v Finn, 60 Oh St 513, wherein it provided that the duty rested upon the insurance company to take the necessary steps for appraisal. Also see Insurance Company v Carnahan, 63 Oh St 258, Syllabus 5 and 6.

Plaintiff in her petition presents no specific allegations relative to appraisal. There is the general allegation as follows: "And plaintiff has duly performed all other conditions on her part to be performed under said policy" etc. Plaintiff presents a claimed legal excuse for failure to have an appraisement.

Dr. L. E. Trowbridge, father of the plaintiff, and who according to the record was in charge of the adjustment for the plaintiff, testifies first on page 29 of the record as follows:

"I wrote to them approximately two or three weeks after, requesting a re-appraisement, which was made approximately a month after the first one, and the amount was then raised to $140.00 which was not acceptable. In the meantime, we had started repairs between the two offices."

And at page 35 of the cross-examination of this same witness the following:

"Q. You never communicated with the company by letter or writing? A. No.
Q. Never made any written demand for settlement?

A. No other than notice asking for re-appraisement which resulted in the second meeting.

Q. Did you write a notice to that effect? A. My daughter did.

Q. Do you know whether or not she wrote them?

A. Yes, I wrote the letter; I have a copy at my office.

Q. Who was that written to? A. To the Caledonian-American Insurance Company, or else to their agent, I do not know which."

The copy of the letter which the doctor mentions was not introduced in evidence nor was the original called for. No other witness, either for plaintiff or defendant, makes any reference to the letter. There is a very serious question whether or not this particular piece of evidence was intended by Dr. Trowbridge to procure an appraisement under the terms of the policy. The context of what appeared previously and afterwards might readily lead to the conclusion that the doctor had referred to estimates which he had had carpenter contractors make as to the amount of damage. The first estimate was made immediately following the fire and before the adjuster appeared on the scene. The second was made following the arrival of the adjuster and this second estimate was at the suggestion of the adjuster.

However, if the letter concerning which the doctor testifies was mailed and received by the company and asked for an appraisement, even though the word "re-appraisement" is used, would adequately raise a factual question for the determination of the jury as to whether or not there was a demand made for an appraisement. If so, and the company failed, neglected, or refused to join this would be a legal excuse.

The case of **Phoenix Insurance** **Company of Brooklyn v T. & W. R. Carnahan, 63 Oh St 258,** is in point. In the cited case the situation was just opposite as in the instant case, i.e. the insurer had made the demand for appraisement and the insured had refused, and the Court held that under such situation the Supreme Court held that the trial court had erred in not directing a verdict for the defendant. The remedy would be different, depending upon which party had refused to joint in the appraisal. In the reported case the insured, having refused, he would be barred of recovery. In the instant case if the insurance company refused, it could not set up as a defense failure to have an appraisal.

It is our conclusion that there is enough in the record to raise the question as to whether or not the failure to have an appraisal was occasioned through neglect or refusal of the insurance company. The Court was not in error in refusing to direct a verdict.

"IV

THE COURT ERRED IN SUBMITTING TO THE JURY FOUR SPECIAL CHARGES OF THE APPELLEE AND IDENTIFIED BY THE APPELLEE AS NO. 2, 3, 4, AND 5."

Special Request No. 2 reads as follows:

"2. Clauses in an insurance policy prohibiting waiver of any of its provisions unless endorsed on the policy in a prescribed manner refer only to those provisions and conditions which constitute part of the contract of insurance but do not apply to waiver after a loss has occurred or after liability has been attached by reason of the occurrence of an event within the pro-

tection of the policy such as furnishing proof of loss, sending immediate written notice, and the giving of other notices; and a waiver of such subsequent proofs of loss and notices may be shown by words or conduct, on the part of the insurer or its authorized agent inconsistent with an intention to enforce strict compliance with the terms of the policy, from which the insured is lead to believe such compliance is unnecessary, and whereby he fails to make such compliance."

No. 3 reads as follows:

"3. The requirement of preliminary proof of loss is a formal condition, inserted in the policy of insurance solely for the benefit of the insurer, and it may waive such proofs in whole or in part, either by direct action of the insurer, or its general agent by virtue of his authority and such waiver may be express or implied."

No. 4 reads as follows:

"4. An insurance company must not, by its acts or the acts of its authorized agents, within the scope of their duties and authority, do anything to throw the insured off his guard and cause him to believe, as any reasonable man under similar circumstances would believe, that proofs of loss are not wanted by the company or they will be held to have waived such proof."

"5. Where an insurance company by its adjuster proceeds to investigate a loss on its merits, and and by what it does causes the insured to believe and a man of ordinary intelligence under the circumstances would have so believed, that it was only the amount

of loss in dispute, and nothing else, that will amount to a waiver of proof of loss."

We think that the words: "That it was only the amount of loss in dispute, and nothing else" should be eliminated.

Specials No. 2, 3, and 4 are supported by the case of Lind v The State Automobile Mutual Insurance Association, et al., 128 Oh St, page 1. We would also suggest the reading of the opinion by Judge Zimmerman.

"V
THE COURT ERRED IN ITS GENERAL CHARGE TO THE JURY".

We are constrained by the view that the Court's charge was erroneous in certain particulars. Again referring to the case of Lind v The State Automobile Insurance Association, 128 Oh St, page 1, on page 7 of the opinion we find the following:

"Waiver of conditions as to immediate and written notice of an accident, furnishing proofs of loss, and similar notices, might be effectively accomplished through the words, acts, or contact of an authorized agent of the insurer, and whether or not such waiver has taken place is generally a question of fact for the jury."

Counsel for appellee recognize this principle of law as is manifest from reading their brief. They urge that the Court did so charge, but we cannot agree with this contention. Commencing at page 73 of the record and continuing on page 74 the Court charged the jury in substance that plaintiff notified the local agent of the company immediately after the fire, and the agent then notified the company,

and the company upon that notice proceeded to adjust or send an adjustment company whom they employ, and if they had proceeded in that way then they would have waived that clause requiring a written notice by the insured. This part of the charge is not strictly correct, but we do not think that under the state of the record that it would be prejudicial.

The plaintiff in her petition did not allege waiver but rather claimed that notice was given to the company. We think, as a matter of law, the fact that the company accepted the notice from the agent and proceeded without objection to send an adjuster would be recognizing the efficiency of a notice. The language following immediately, in our judgment, is objectionable. It reads as follows:

"The same applies to where an appraisal and a proof of claim is required. If, upon the notice they had received they acted, instructed their adjusters to proceed to adjust the claim, by the power they had conferred upon them to make certain recommendations and had done all these things without a proof of claim, then in that instance, the company under the law, has waived all right to plead in defense in that clause of the policy. This is all the law that has any bearing on this case; these two points."

We do not think that it is a correct statement of law to say that the appearance of an adjuster following a fire loss and his investigation, conference, negotiations for settlement, would, as a matter of law, constitute a waiver of the obligation of the insured to present proof of loss. These matters, in connection with the admitted testimony that the adjuster had stated to the insured or her agent that it was not necessary to make out proof of loss pending the negotiations, together with the further fact that the negotiations were continued past the 60-day period would present a question of fact for the determination of the jury as to whether or not there was a waiver. The matter to which the Court refers in the above quoted portion of his charge would certainly not constitute a waiver of appraisal. This question was raised by other testimony, and the jury should have been charged thereon.

According to plaintiff's claim, the only controversy was a dispute as to the amount of damages. Whenever this matter is in dispute the policy provides for an appraisal, and it is the duty of the insured to see that an appraisal is had or present a legal excuse. The only possible legal excuse was that the appraisement was demanded and the insurance company failed to act.

Following the charge of the Court, to which we referred, he then in substance repeats with some modification:

"If you find that through the company agent and the adjusters employed by them, entered into negotiations in regard to the approximate amount that should be paid to the plaintiff by the company for her loss, and they continued that and it extended for a period over 6 days or more after the fire, then the company has waived the right to plead the absence of proof of claim."

This again in our judgment is an incorrect statement of law.

Continuing as follows:

"You must find all these matters, in regard to proof of claim and notice, you must find from the evi-

dence that that is so, but if you find that Mrs. Madison through her agent, notified them and they acted upon it and they employed adjusters and they proceeded to settle the claim, made offers, and it was continued over a time in which to file a proof of claim, then you will go further, you will consider the amount of damages claimed, that is to say, all these matters that have been pled in defense are waived aside held for naught by the company, by its adjusters or agents. You will then proceed and the issue becomes very simple. If you find as I have instructed you then the only thing left you is to find the amount due Mrs. Madison, if any."

As heretofore stated, we think the Court was in error in instructing the jury that certain enumerated acts constituted waiver. Rather than leave it to the jury as to whether or not under a proper instruction of law such facts as here presented through the evidence would constitute a waiver.

Again aside from the one place where the Court connects up the provisions of the policy relative to an appraisal with the provisions relative to proof of loss, no instructions were given to the jury on this question. The law is well recognized that where ▆▆▆▆▆▆ the plaintiff pleads generally a compliance with all the provisions of the policy and there is a general denial in the answer the burden rests upon the plaintiff to prove all conditions precedent.

Counsel for appellee urge that under the state of the record the question of lack of appraisal is an affirmative defense and cite in support of their claim the case of **Insurance Company v Titus, 82 Oh St, 161.**

A reading of the second syllabus of the cited case will disclose that it does not support plaintiff's contention. This rule was only applicable where the petition avers: **"No disagreement as to the amount of the loss."** (Emphasis ours.)

In the instant case both the petition and the evidence disclose that there was a dis- ▆▆▆▆▆▆ agreement as to the amount, and, hence, the duty was upon the plaintiff to present evidence of a compliance with this condition precedent or a legal excuse.

It is our determination that the errors of the Court in its charge to the jury were prejudicial.

"VI

THE COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR NEW TRIAL."

By reason of our finding of prejudicial error under assignment 4 and 5 it necessarily follows that the Court was in error in not granting a new trial.

"VII

THE VERDICT OF THE JURY IS AGAINST THE WEIGHT OF THE EVIDENCE AND IS CONTRARY TO LAW."

This ground of error is of minor importance, since by reason of designated prejudicial errors the cause will be remanded for new trial.

If the question of the weight of the evidence was the sole ground of complaint, we would have considerable difficulty in sustaining the verdict by reason of the unsatisfactory character of the proof from which might be evolved a claimed legal excuse for failure of plaintiff to procure appraisal according to the terms of the policy.

In the light of what has been heretofore recited in this opinion it is probable that this evidence will be developed by both sides. At this time we refrain from making any finding on the question of the weight of the evidence.

## "VIII

THE COURT ERRED IN THE ADMISSION OF THE EVIDENCE OVER THE OBJECTION AND EXCEPTION OF THIS APPELLANT AND IN EXCLUSION OF EVIDENCE OFFERED BY APPELLANT."

The first objection relates to the admitted evidence relative to a proffer of settlement. The law is well recognized that an offer to compromise matters in dispute is incompetent. Scherer v Piper and Yenney, 26 Oh St 476.

The reason for the rule is to encourage settlement of differences without having it urged that such offers of settlement are an admission of liability. In the instant case the only effect of this evidence was to disclose that a difference had arisen which would be a predicate for an appraisal.

It could well have been presented in a different form, but we do not think that such evidence was prejudicial.

Objection was also made to a question propounded by counsel for plaintiff to the plaintiff which was leading in form and sought to draw an answer from plaintiff that the amount of $479.80 was still due. While the Court improperly overruled the objections to the question, yet the record discloses that the same was not answered. There was no prejudicial error.

Complaint is made that the Court denied to defendant the right to introduce certain bills in testimony as exhibits which were produced by a witness for the plaintiff and inquired about in some detail in cross-examination. It was the ruling of the Court that such exhibit might not be introduced in cross-examination, but that counsel might have the privilege of recalling the witness on behalf of the defendant and thereafter have the bills identified and introduced. This counsel did not do. These bills were not identified as exhibits which would have have been the proper procedure. Had they been so identified and offered as a part of the cross-examinations, the trial court should then have admitted them. But even had that been done and the Court refused their admission, no prejudicial error would follow, since the counsel could have introduced them without recalling the witness. Complaint is also made that the Court refused to permit the defendant to show the rental value of the property. Under the latitude of cross-examination this inquiry should have been permitted, since plaintiffs in the presentation of their testimony referred to the rental character of the building. However, we do not consider the Court's action prejudicial.

## "IX

THE AMOUNT OF RECOVERY IS EXCESSIVE AND APPEARS TO HAVE BEEN GIVEN UNDER THE INFLUENCE OF PASSION AND PREJUDICE, AND FOR OTHER ERRORS ON THE FACE OF THE RECORD PREJUDICIAL TO THE RIGHTS OF THE APPELLEE."

If the state of the record was such as to permit the plaintiff to recover at all, we would not support appellant's claim that the amount of the verdict was excessive.

"X

THE COURT OF COMMON PLEAS ON APPEAL OF SAID CASE TO SAID COURT FROM THE MUNICIPAL COURT OF THE CITY OF PIQUA, OHIO, ERRED IN SUSTAINING SAID JUDGMENT AND REMANDING SAID CAUSE TO THE MUNICIPAL COURT OF THE CITY OF PIQUA, OHIO, FOR FURTHER PROCEEDINGS."

By reason of prejudicial error upon the part of the trial court, it necessarily follows that the Common Pleas Court was in error in not reversing the cause and remanding for new trial.

Coming now to enter the judgment that should have been rendered by the Common Pleas Court, we order that the judgment of the Municipal Court be reversed and the cause remanded for new trial. We remand the cause to the Common Pleas Court with directions that a mandate issue in accordance with the above judgment.

Costs in this Court are adjudged against the appelee.

Exceptions are allowed.

HORNBECK, PJ., and GEIGER, J., concur.